IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **GREAT LAKES INSURANCE SE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:20-cv-343 (MTT) |
| | ) |
| **HABIF PROPERTIES, LLC,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Great Lakes Insurance SE moved for judgment on the pleadings, contending that the pleadings established, for several reasons, that it did not owe Habif Properties, LLC, Morris N. Habif, LLC, MH Northgate Holdings, LLC, and Planetary Properties, LLC (the "Habif Defendants") a duty to defend or indemnify them for claims arising out of a shooting incident that is the subject of a lawsuit pending in the State Court of Bibb County. Doc. 16. The motion required the Court to consider matters outside of the pleadings, so pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the Court converted Great Lakes's motion to one for summary judgment. Doc. 24. For the reasons discussed below, Great Lakes's motion (Doc. 16) is **GRANTED**.

**I. BACKGROUND**

On July 6, 2019, Tamarco Head was shot and killed at a nightclub located at Northgate Plaza in Warner Robins, Georgia. Docs. 1 ¶¶ 15-18; 11 ¶¶ 15-18; 12 ¶¶ 15-18. Northgate Plaza was then owned by two of the Habif Defendants. Docs. 1 ¶ 20; 1-

2; 1-3; 11 ¶ 20.  At the time of the shooting, Great Lakes had in place a commercial general liability insurance policy insuring Northgate Plaza.  *See generally* Docs. 25-1; 25-2.  On May 29, 2020, Fantaba Head, Head's surviving spouse and administrator of his estate, filed suit in the State Court of Bibb County against the Habif Defendants.[1]  Docs. 1 ¶¶ 24-25; 1-4; 11 ¶¶ 24-25.  The state court action alleges, among other things, that:

> Tamarco Head was a victim of aggravated assault, aggravated battery and ultimately, homicide, when he was shot with a deadly weapon as bullets sprayed throughout the Premises. Tamarco survived the shots, but ultimately succumbed to his injuries.
>
> …
>
> The assailants who shot Tamarco Head were negligently allowed to enter and remain on the Premises because Defendants failed to implement adequate security measures to prevent individuals like the assailants from entering the Premises, correctly remove them from the Premises, or to deter them from remaining on the Premises.
>
> Defendants had a duty to provide security policies and procedures for the protection of their invitees, like Tamarco Head.
>
> Defendants failed to provide adequate security policies and/or security procedures for the protection of invitees, like Tamarco Head.

Docs. 1-4 ¶¶ 12; 1 ¶ 29; 15-17; 11 ¶ 29.

After securing a "full reservations of its rights,"[2] Great Lakes agreed to defend the Habif Defendants in the state court lawsuit.  Docs. 1 ¶¶ 39-48; 1-7; 1-8; 1-10; 1-11; 1-

---

[1] Ms. Head and her husband's estate are defendants in this action.  After the Court converted the motion to one for summary judgment and the record was complete, Head and the estate "[did] not oppose the Court granting summary judgment for [Great Lakes] on the grounds that the commercial general liability coverage part of [the] Great Lakes insurance policy … contains an exclusion stating that the insurance does not apply to bodily injury arising out of the use of firearms by any insured or any other person as well as an Assault or Battery Exclusion."  Doc. 27 at 2.

[2] The defendants do not dispute that Great Lakes properly reserved its rights and do not contend that Great Lakes waived its defenses to any claims for coverage under Great Lakes's policy.

12; 1-13; 1-14.  Great Lakes then filed this declaratory judgment action.  Doc. 1.  In its converted motion for summary judgment, Great Lakes makes five arguments: (1) Morris N. Habif, LLC has no insurable interest in Northgate Plaza, (2) MH Northgate and Planetary Properties are not insureds under the policy, (3) Habif Properties is not an insured under the policy, (4) the Assault or Battery exclusion bars coverage, and (5) the Firearms/Weapons exclusion bars coverage.  Doc. 16-1 at 9-17.  The parties agree that if either the Assault or Battery or the Firearms/Weapons exclusion is enforceable, Great Lakes is entitled to judgment.  Because both are enforceable, the Court does not reach Great Lakes's other grounds for summary judgment.

Since Great Lakes began insuring Northgate Plaza on August 16, 2012, Great Lakes's policy has included both the Assault or Battery and the Firearms/Weapons exclusions.  Docs. 28-1; 28-2 at 101-02, 105.  In full, the exclusions, with applicable definitions, provide:

> This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of an "assault," "battery," or "physical altercation":
>
> a. Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, patrons, or other persons in, on, near, or away from an insured's premises; or
>
> b. Whether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition; or
>
> c. Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, or failure to warn of the "assault," "battery," or "physical altercation," or providing or not providing or summoning or not summoning medical or other assistance in connection with the "assault," "battery," or "physical altercation," including but not limited to, negligent hiring, training, or supervision; or

  d. Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons, or other persons.

…

"Assault" means any attempt of threat to inflict injury on another including any conduct that would reasonably place another in apprehension of such injury.

"Battery" means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected.

"Physical altercation" means a dispute between individual[s] in which one or more persons sustain bodily injury arising out of the dispute.

…

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the manufacture, importation, sales, distribution, ownership, maintenance, or use of firearms or "weapons" by any insured or any other person.

Doc. 28-2 at 101-02, 105.

## II. SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment upon showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the movant bears the burden of proof at trial, it must show there is no genuine dispute that it has met the elements of its claim or defense. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991). The non-movant may defeat a properly supported motion by producing "significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th

Cir. 1991)). In other words, that there is indeed a genuine dispute regarding a material fact. *See id*.

"A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quotation marks omitted). Therefore, when deciding if summary judgment is appropriate, the court must not "weigh the evidence and determine the truth of the matter" on its own but should determine only whether a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). In doing so, the court should draw all justifiable inferences, and resolve any reasonable doubts concerning the facts, in favor of the non-movant. *Id*. at 255; *Info. Sys. & Networks Corp.*, 281 F.3d at 1224. If, after reviewing the entirety of the record "in the light most favorable to the [non-movant]," the court determines a reasonable jury could not find in favor of the non-movant, then summary judgment is appropriate. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("'[T]he District Court [must] consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'"). (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

### III. DISCUSSION

"Insurance is a matter of contract and the parties are bound by the terms of the policy." *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221, 231

S.E.2d 245, 249-50 (1976) (citations omitted).  Further, "the insured is chargeable with knowledge of all the conditions imposed upon him by the terms of his policy." *Id*. (citations omitted).

In Georgia, the interpretation of an insurance policy is generally "a question of law," to which courts apply the "ordinary rules of contract construction." O.C.G.A. § 13-2-1; *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998) (citations omitted).  "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." O.C.G.A. § 33-24-16.  "[U]nder the rules of contract construction, the policy is construed against the insurer as the drafter of the policy and any exclusions from coverage are strictly construed." *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371-72, 599 S.E.2d 220, 221 (2004) (citation and brackets omitted).  If the policy exclusions are unambiguous, they must be given effect "even if beneficial to the insurer and detrimental to the insured." *Id*. at 372 (quoting *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 216, 496 S.E.2d 696, 699 (1998)); *see also Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n, Inc.*, 288 Ga. App. 355, 654 S.E.2d 207 (2007); *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 591 S.E.2d 430 (2003).  When determining whether an insurance company has a duty to defend, courts compare "the language of the policy … with the allegations of the complaint." *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407-08, 730 S.E.2d 413, 418 (2012).

The Habif Defendants argue that the coverage exclusions are ambiguous.[3] The entirety of their argument is stated in one sentence: "More specifically, it is unclear whether the Exclusions apply solely to acts committed by employees or agents of the Habif Companies, or whether they instead apply to anyone who commits an assault or battery or uses a firearm on the Property." Doc. 26 at 12. Thus, the Habif Defendants argue that it is unclear whose assaults are excluded or whose use of firearms is excluded. The Court disagrees; the plain language of both exclusions precludes coverage for claims arising from Head's injuries and death.

The Assault or Battery exclusion provides that Great Lakes's policy "does not apply to 'bodily injury,' … arising out of an 'assault,' 'battery,' or 'physical altercation.'" Docs. 25-2 at 98-99; 28-2 at 101-02. The exclusion applies:

> Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, *patrons, or other persons* in, on, near, or away from an insured's premises; or …
>
> Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, *patrons, or other persons*.

Docs. 25-2 at 98-99; 28-2 at 101-02 (emphasis added). Clearly, the exclusion states, without ambiguity, whose assaults are excluded—everyone's. Perhaps the Habif Defendants mean to argue that the phrase "insured, an insured's employees, patrons, or other persons" can be read to describe only people connected or related to an

---

[3] Initially, the Habif Defendants argued that the relevant exclusions were somehow improperly added to their policy. Doc. 22 at 8-9. Factually, that turned out to be wrong. *See generally* Docs. 28-1; 28-2. The exclusions were in every policy issued by Great Lakes. Docs. 25-1; 25-2 at 98-99, 102; 28-1; 28-2 at 101-02, 105. Even if the exclusions had been added in a new policy year, the Habif Defendants never convincingly explained why that made a difference. Their main point seemed to be that their insurance agent should not have secured for them a policy containing the exclusions. Docs. 26 at 2-3, 10; 26-1 at 17-18, 46-48, 58-66. That, of course, is a matter between the Habif Defendants and their insurance agent, not Great Lakes. The Court acknowledges the Habif Defendants' predicament—their policy excludes coverage for the very claims that the proprietor of a bar fears most. But while their attorneys have raised every conceivable argument, they cannot avoid the plain language of the policy.

insured.[4]  But that argument, if made, would have no grammatical or logical basis.  The phrase consists of independent items in a series.  Each item describes categories of persons, not subcategories of the first item in the series.  Nothing in the structure or wording supports the reading that the exclusion applies only to patrons or other persons who are *connected* to the insured.  True, the last item—other persons—broadens the exclusion to include assaults committed by anyone, but that does not in any way make the exclusion ambiguous.  In short, assaults are excluded regardless of who commits them, whether the aggressor is an insured, an employee, a patron, or any "other person."[5]  Docs. 25-2 at 98-99; 28-2 at 101-02.

The Firearms/Weapons exclusion says the same thing, albeit with more economy and thus even more clarity:

> This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the manufacture, importation, sales, distribution, ownership, maintenance, or *use* of firearms or "weapons" by any insured *or any other person*.

---

[4] At first blush, this may sound like an appeal to *noscitur a sociis* ("known by the company it keeps"), the interpretive principle that words grouped in a list often have similar meanings.  A similar argument persuaded a plurality of Justices in *Yates v. United States*, 574 U.S. 528 (2015).  There, for a variety of reasons not present here, those Justices relied, in part, on the *noscitur a sociis* canon to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words" and concluded that a fish is not a tangible object.  *Id*. at 543-45 (citations omitted).  But those canons are generally tools for identifying the intended meaning or reasonably understood meaning of a word or phrase.  And the Court is satisfied that no reasonable person reading the Assault or Battery exclusion would conclude that the exclusion implicitly limits "other persons" to persons "connected to the insured."  Unlike Congressional acts, exclusions or limitations of liability are intentionally broad and are intended to exclude precisely those claims not foreseen or provided for by the more specific preceding terms.  Further, if *noscitur a sociis* (or the related canon of *ejusdem generis*) requires identifying a common theme in the first few items in the list that then narrows the final item, there is no reason, grammatically or in the context of the exclusion as a whole, to think that "connected to the insured" would be that theme.  On the contrary, in context, the theme clearly is "potential assaulters."  In any event, even if this argument had the slightest merit, it has no relevance to the Firearms/Weapons exclusion.

[5] The Habif Defendants, understandably, do not argue that Ms. Head's theory of recovery—failure to provide security policies or procedures—somehow opens a door to coverage.  The exclusion applies "[w]hether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition."  Doc. 28-2 at 101.

Docs. 25-2 at 102; 28-2 at 105 (emphasis added).  Not incidentally, the terse phrase "insured or any other person" cannot possibly be read to limit the exclusion to persons connected or related to an insured.  The exclusion applies to an insured and to any other person.

Given the clarity of the exclusions, it is hardly necessary to discuss supporting authority.  So, the Court simply provides in the margin a string cite of cases that make clear that both exclusions are enforceable.[6]

Tamarco Head was shot and killed at a nightclub located on property covered by the Great Lakes policy.  Docs. 1 ¶¶ 15-18; 11 ¶¶ 15-18.  The complaint in the state court action alleges:

> Tamarco Head was a victim of aggravated *assault*, aggravated *battery* and ultimately, homicide, when he was *shot with a deadly weapon* as bullets sprayed throughout the Premises.  Tamarco survived the shots, but ultimately succumbed to his injuries.

Docs. 1 ¶ 29; 1-4 ¶ 12 (emphasis added).  The complaint further alleges that the Habif Defendants negligently allowed the "assailants who shot Tamarco Head" to enter the premises.  Doc. 1-4 ¶ 15.  Head's injuries and death arose out of an assault by person(s) on the insured premises, and they arose out of the use of a firearm by person(s) on the insured premises.  Thus, the underlying claim clearly falls within the plain and unambiguous language of both the Assault or Battery and Firearms/Weapons

---

[6] *Hudson Specialty Ins. Co. v. Snappy Slappy LLC*, 2019 WL 1938801, at *2 (M.D. Ga. May 1, 2019) (exclusion of coverage for claims arising out of the use of firearms enforceable even though the policy did not specify whose use barred coverage); *First Specialty Ins. Corp., Inc. v. Flowers*, 284 Ga. App. 543, 545-46, 644 S.E.2d 453, 455-56 (2007) (assault and battery exclusion was unambiguous and applied to "any claim or suit for bodily injury or death arising out of an assault and battery committed on the … premises, regardless of who committed the assault and battery"); *Capitol Indem., Inc. v. Brown*, 260 Ga. App. 863, 581 S.E.2d 339 (2003) (assault or battery exclusion applied to assaults by the insured's employees or third parties).

exclusions.  Accordingly, Great Lakes is under no obligation to defend or indemnify the Habif Defendants.

### IV. CONCLUSION

For the reasons discussed above, Great Lakes's motion for summary judgment (Doc. 16) is **GRANTED**.

**SO ORDERED**, this 14th day of June, 2021.

S/ Marc T. Treadwell  
MARC T. TREADWELL, CHIEF JUDGE  
UNITED STATES DISTRICT COURT